| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| BEN BATES WADDELL, | CASE NO. 07cv113 H (NLS) |
|---|---|
| Plaintiff, | **ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION TO STAY** |
| vs. | |
| MATTHEW CATE, Secretary of the California Department of Corrections and Rehabilitation, | |
| Respondent. | |

On January 12, 2007, Ben Bates Waddell ("Petitioner"), a California prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) On July 21, 2008, Respondent filed a motion to dismiss the petition. (Doc. No. 32.) On September 12, 2008, Petitioner filed a motion to stay which this Court construes as an opposition to Respondent's motion. (Doc. No. 36.) On October 16, 2008, the magistrate judge filed a Report and Recommendation, recommending that this Court grant Respondent's motion to dismiss and deny Petitioner's motion to stay. (Doc. No. 37.) As of the date of this Order, Petitioner has not filed an objection to the Report and Recommendation.

For the reasons set forth below, the Court ADOPTS the Report and Recommendation, GRANTS Respondent's motion to dismiss, and DENIES Petitioner's motion to stay.

## Background

**A.   Procedural History**

A San Diego County Superior Court jury found Petitioner guilty of first degree burglary, theft with a prior conviction, possession of a controlled substance, and resisting a peace officer. (Lodgment 4 at 1.) The jury also found true the allegation that a person other than an accomplice was present in the residence during the burglary. (Lodgment 4 at 1-2.) On June 4, 2004, the California Court of Appeal affirmed Petitioner's conviction and sentence. (Lodgment 4 at 1.) On September 15, 2004, the California Supreme Court denied Petitioner's petition for review. (Lodgment 6 at 1.)

On August 17, 2005, Petitioner filed a habeas petition with the California Supreme Court. (Lodgment 7.) In his petition, Petitioner raised eight claims: (1) ineffective assistance of trial counsel; (2) vindictive prosecution; (3) an improper true finding on an enhancement; (4) no qualifying prior conviction for the enhancement; (5) a violation of Blakely v. Washington, 542 U.S. 296 (2004) in sentencing; (6) ineffective assistance of appellate counsel; (7) improper impeachment; and (8) insufficiency of the evidence. (Lodgment 7.) On June 21, 2006, the California Supreme Court denied the petition. (Lodgment 8 at 1.)

On January 12, 2007, Petitioner filed the present federal petition on the same grounds. The Court dismissed the Petition on January 22, 2007, and reopened the Petition on March 13, 2008.[1]

**B.   Factual History**

The state appellate court summarized the relevant facts as follows:

> On October 16, 2002, Sally Corson lived in La Jolla with her husband, Steve Schreiner and their two children. She returned to her La Jolla home about 1:30 p.m. and found an unfamiliar fanny pack sitting on the kitchen counter. She walked into the living room and yelled, "Who's here?" She saw

---

[1] On January 22, 2007, the Court denied Petitioner's motion to proceed in forma pauperis and dismissed the case without prejudice. On March 13, 2008, the Court granted Petitioner leave to submit his filing fee and reopen the case.

1 Waddell walking down the stairs. She said, "Who the hell are you?" He
2 answered, "Hello, I'm Ben," or asked who she was as he continued walking
3 down the stairs toward her. She left, went to a nearby construction site and
4 called the police. The police responded within five to ten minutes and arrested
5 Waddell as he came out the front door of the Corson/Schreiner home. Waddell
6 was wearing clothing belonging to Schreiner.

7 Inside the house, by the downstairs bathroom, Corson and the police
8 found Waddell's clothing. The shower had been used and there were open
9 shampoo bottles and wet towels on the floor. In the master bedroom, clothes
10 had been moved in Schreiner's closet and some hangers and a dry cleaning bag
11 were on the floor. The doors to the birdcages in the daughter's room had been
12 opened. Downstairs, a wine bottle and a wine glass had been moved from a
13 wine cellar to a nearby room. A video had been taken out. Nothing else had
14 been disturbed or taken. Some of the doors to the home were unlocked;
15 Schreiner and the children were not diligent about locking the doors,
16 particularly the home's back doors. Corson, however, believed the front doors
17 had been locked when she left the residence.

18 Neither Corson nor Schreiner had given Waddell permission to enter
19 the house, use their shower, or take any items. Schreiner was at work when
20 the burglary occurred. He had never met Waddell.

21 Waddell's car was found parked on Deerhill Court, about three-fourths
22 of a mile from the Corson/Schreiner home.

23 Waddell testified two women at a party in Ocean Beach invited him to
24 a party in La Jolla. He parked near the party on Deerhill Court. The next day,
25 as he was walking around the area, he saw a woman across a canyon waiving
26 to him from a back deck of the Corson/Schreiner home. The woman was
27 indicating she knew him. He walked over to the house and rang the front door
28 bell. The woman opened the door. She was with Schreiner whom Waddell

1  recognized from the parties in Ocean Beach and La Jolla.  About 30 minutes
2  after he arrived, Waddell took a shower.  Schreiner lent him some clothes to
3  wear until Waddell could return to his car where he had a change of clothing.
4  The three of them talked, listened to music, and watched tapes in the
5  downstairs room near the wine cellar for an hour or two.  Then Schreiner and
6  the woman left, saying they were going to the store, would be right back, and
7  would give Waddell a ride to his car when they returned.

8  While Waddell was upstairs listening to music, Corson entered the
9  house and asked why he was in the house.  He told her he was let in and, in
10  response to her question, told her his name.  When Corson said she was the
11  homeowner, Waddell said "[N]o, I just met the owners."

12  (Lodgment 4 at 2-4.)

## Discussion

14  Petitioner did not file his federal habeas petition until January 12, 2007, well after
15  the California Supreme Court denied his petition for review on September 15, 2004, and
16  well after the California Supreme Court denied his habeas petition on June 21, 2006.  As a
17  result, the Respondent moves to dismiss the petition on the grounds that it is time barred.

18  **A.   Standard of Review**

19  The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended
20  28 U.S.C. § 2254(d) to provide the following standard of review applicable to state court
21  decisions:

22  (d) An application for a writ of habeas corpus on behalf of a person in
    custody pursuant to the judgment of a State court shall not be granted with
23  respect to any claim that was adjudicated on the merits in State court
    proceedings unless the adjudication of the claim–
24
    (1)  resulted in a decision that was contrary to, or involved an
25  unreasonable application of, clearly established Federal law, as
    determined by the Supreme Court of the United States; or
26
    (2)  resulted in a decision that was based on an unreasonable
27  determination of the facts in light of the evidence presented in the
    State court proceedings.
28  28 U.S.C. § 2254(d).

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). The United States Supreme Court has stated that a federal court may grant habeas relief under the "contrary to" clause of § 2254(d)(1) if the state court either (1) "arrives at a conclusion opposite to that reached by this Court on a question of law" or (2) "decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 403 (2000). A federal court may grant habeas relief under the "unreasonable application" clause of § 2254(d)(1) "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412-13. The state court's factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.     Statute of Limitations**

The AEDPA imposes a one-year statute of limitations on a petitioner to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The relevant section of the statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

///

///

The AEDPA statute of limitations begins to run on the day after a defendant's sentence becomes final, unless the defendant can demonstrate that one of the exceptions listed in 28 U.S.C. § 2244(d)(1)(b), (c), or (d) is applicable to his case. See Bowen v. Rowe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Petitioner's conviction became final on December 14, 2004, ninety days after the California Supreme Court denied Petitioner's petition for review on September 15, 2004. Petitioner does not allege or demonstrate that any of the exceptions in 28 U.S.C. § 2244(d)(1)(b), (c), or (d) are applicable to his case. The Court therefore finds that Petitioner's statute of limitations began to run on the day following the finality of the state court judgment, December 15, 2004, and expired one year later, on December 14, 2005.

### 1. Statutory Tolling

A petitioner's statute of limitations is tolled while a properly filed state habeas corpus petition is pending in state court. 28 U.S.C. § 2244(d)(2). On August 17, 2005, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court, 244 days after the commencement of the statute of limitations. On June 21, 2006, the California Supreme Court denied the state petition. The statute of limitations was tolled from August 17, 2005, to June 21, 2006, while the state petition was pending. Petitioner did not file any other petitions in state court. On January 12, 2007, Petitioner filed the federal habeas petition, 205 days after the denial of his state petition. Therefore, the statute of limitations ran for a total of 449 days prior to the filing of the federal petition. Consequently, absent equitable tolling, Petitioner's federal habeas petition is untimely.

### 2. Equitable Tolling

The one-year period of limitations under AEDPA is subject to equitable tolling when "'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." Calderon v. U.S. Dist. Ct., 128 F.3d 1283, 1288 (9th Cir. 1997) (quoting Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996)) (overruled in part on other grounds by Calderon v. U.S. Dist. Ct., 163 F.3d 530 (1998)). A petitioner seeking equitable tolling bears the burden of establishing "(1) that he has been pursuing his

1  rights diligently, and (2) that some extraordinary circumstance stood in his way."
2  Raspberry v. Garcia, 448 F.3d 1150, 1153 (9th Cir. 2006) (quoting Pace v. DiGuglielmo,
3  544 U.S. 408, 418 (2005)).

4      Petitioner does not claim that he is entitled to equitable tolling; however, the Court
5  construes the following statement in Petitioner's opposition as such: "More significantly, if
6  the Petition is untimely it is because of the California Department of Corrections and
7  Rehabilitation. Inadequate access to the library on the level one institution in Candela.
8  When they move to Chino there I had access to Law library." (Doc. 36 at 1.) Petitioner
9  does not set forth any allegations regarding his diligence in pursuing his rights. Petitioner
10 further fails to specify the nature of the alleged limited library access or how the library
11 access affected his ability to pursue his rights. As such, Petitioner does not demonstrate
12 that any alleged limitation in library access caused the delay in filing the habeas petitions.

13     Petitioner fails to meet his burden of establishing that extraordinary circumstances
14 beyond his control prevented him from timely filing the federal habeas petition. The Court
15 therefore concludes that equitable tolling is not applicable in the instant case. Because the
16 Court finds no grounds for equitable tolling or additional statutory tolling, the Court
17 concludes that the federal petition is untimely and barred by the statute of limitations.

18 **C.      Exhaustion**

19     Because the Court finds that Petitioner failed to file the federal petition before the
20 expiration of the applicable statute of limitations, and no equitable tolling exists, the Court
21 does not reach the issue of claim exhaustion. The Court notes, however, that the state court
22 reviewed and denied Petitioner's state habeas claims that mirror his federal habeas claims.
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

## **Conclusion**

For the reasons stated above, the Court ADOPTS the Report and Recommendation, GRANTS Respondent's motion to dismiss petition for writ of habeas corpus, and DENIES Petitioner's motion to stay. The Court also denies a certificate of appealability.

IT IS SO ORDERED.

DATED: February 10, 2009

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:

All parties of record.